It's an honor to be before the court. This appeal involves one simple issue, which is whether the standard for judicial review of arbitration awards based on a crop insurance claim is the same as for all other cases under the Federal Arbitration Act. If it is, then my client, the appellant Williamson Farm, is entitled to confirmation of the arbitration award entered by the esteemed arbitrator in its entirety. The procedural history of this case is relatively simple. We filed an arbitration demand pursuant to the arbitration requirements of the two crop insurance policies in March 2015 based upon a crop insurance claim arising from the crop year 2013. That arbitration demand contained both contractual and non-contractual claims. The arbitrator entered an award in our favor in May 2016 of approximately $640,000. Which again comprised both contract claims and non-contract claims. A motion to confirm the arbitration award was entered that very month. The defendant diversified had filed a motion to vacate. And finally, a decision on our motion to confirm and the defendant's motion to vacate was heard in March of 2000, or was decided in March of 2018, where Judge How could there have been contract damages in this case if the farms were not covered by the policies? And I think that is a dispute of fact as to whether they were covered under the policies or not. As the arbitrator determined, there were two policies in effect and the policies are contained in the joint appendix. And the arbitration policies do not in fact provide what counties the policies are covered for or whether they are not. All that you get is the same crop insurance policy that every other farmer gets when they are given their policy. In fact, even when they are given their statement, and crop insurance works differently than most typical insurance policies, you pay your premium after the crop year while you are harvesting. So in this case, you've got a crop insurance policy that is issued in the beginning of the crop year, which would be February, March of 2013, and then you pay your premium in September, which I believe is Exhibit E, to the award of the arbitrator. You pay your premium, which they did in August or September of that year. Most notably, even the premium exhibit that is submitted to the Williamson Farm or to the farmer does not contain any additional information other than here are the policies here for what counties and here's what you need to pay. Under what authority did the arbitrator have to award extra contractual damages, fees and costs? Sure. And this is where I believe there is some confusion as to both law and the policy. We have cited ample case law which provides that crop insurance claims or extra contractual crop insurance claims are not preempted by the Crop Insurance Act. And we would submit that those, that law is good and that the crop, excuse me, the arbitrator who has it. So what does the FAD 193 and 99, what does that mean then, which state that the extra contractual damages can only be sought during an appeal to the courts after an FCIC determination has been obtained and cannot be awarded in arbitration? What's the point of that? I think the point of that, and the FADs all say what they're supposed to say, and they are all controlling on the arbitrator. I don't believe we get to that issue in this case because the issue is what standard of deference is the arbitration award entitled to, not whether the district court or this court may have a dis- Well, none if the arbitrator did something they were not empowered to do, which it sounds like this rule says they can't, this arbitrator couldn't, couldn't award extra contractual damages without first having an FCIC determination. Well, and the FCIC regulations specifically say in a judicial review only these types of damages will be considered. There has to be a predetermination by the FCIC before you can proceed. So I don't understand how the arb — what possible basis there is for the arbitrator's award when you have this regulatory system in place that requires this predetermination in order to proceed on other damages. Sure. And I would make the analogy that these rules and these FADs are just like law that an arbitrator is supposed to interpret and follow. Yeah, but an arbit — even though we give extreme deference to the arbitrator's decision on the theory that, you know, parties, you ask for an arbitrator, you get it, the arbitrator has to have the power to do what she or he actually did. And what I'm struggling with is where is the authority to even remotely do — it seems like the regs say the opposite. You can't do it unless you get this predetermination. And then with regard to attorney's fees and other punitive damages and other compensatory damages, they're for judicial review. I'm not disputing what the FADs and regulations say. I do believe that the arbitrator is empowered with the authority — To just ignore them? And that was sometimes what arbitrators do. And 20A of the policy provides that all disputes, not contractual — I've not seen a court, except for this circumstance, vacate the arbitration award. And I think the circumstances of which the court vacated this arbitration award was because the court substituted its own findings as to what the claims were rather than defer to the arbitrators. And I think that's the seminal issue. So going back to the — you've said the arbitrator has authority to do what he or she did. Where is that — where can we find that authority? 20A is the section of the arbitration — or the insurance policy that has the arbitration provisions. And it says all — So the insurance policy trumps the regulation? Well, I think they're all supposed to be treated at the same. In terms of what applies, I think that the contract would apply. But 20A just says that the disputes go to arbitration. Correct. That's all. Correct. It doesn't say the arbitrator can do things contrary to the established regulations, does it? I don't — I think it just says the arbitrator is supposed to decide all disputes. And how they decide those disputes is within their power. Now, whether they are supposed to follow the guidelines, the regulations, the FADs, I think that they are. And what confuses this issue as to the extra contractual damages is that the regulations and the policy do provide that extra contractual damages can be awarded, but only if FCIC makes a determination. In this case, we requested — the appellant requested the FCIC to make a determination. And this was before the arbitration order and hearing were made. So you can't do that until the arbitration process is completed. Right. So you're put in a catch-20. As with this policy in general, the arbitrator is put in a catch-22 as to what they can decide and not. So I think you can certainly critique what the arbitrator did with respect to the extra contractual damages. But it is not, in terms of the deference that is given to the procedure, which was to go through the arbitration. And there's no dispute that the arbitrator is — Okay. So what if the arbitrator had said, you know, this is just really not fair, and I think we've got to compensate Williamson Farms. I order Diversify to provide them with 100 free tractors, okay, as compensation. Would your position say that the arbitrator's award of 100 free tractors had to be upheld? And how is that case any different, that scenario any different from what we've got here? Well, I think the analogy can be made to the Apex case. The Fourth Circuit is pretty black-letter law on the deference to arbitration agreements. And in the Apex case, which is a well-known case in terms of enforceability of arbitration awards, there was an argument that — Okay. So you're saying that the 100 free tractors, we would just have to Even though this was an insurance contract with specific provisions, we'd have to say, no, those tractors have to go to Williamson. Well, I think under that circumstance, it's the arbitrator's own brand of justice, which I think would permit — Okay. How is this any different from that? Because there's case law that supports the award of extra contractual damages. The arbitrator — Since 2004, when the whole system changes, you're saying there's case law that Yes, Your Honor. The Moy case that we cited was a 2010 case. There were also several cases which discussed that claims non-contractual were not subject to dismissal for various — I believe one was an 11th Circuit case, things like that. But to be clear, the law on crop insurance is not well-formed. And I think the reason for that is because the arbitrators decide the case. Now, when we were dealing with the Apex case — It could be that this is a very highly regulated insurance program because you have two federal agencies that have certain oversight on it. So would you agree with that? That it's heavily regulated? Yeah. Yes, sir. And why would you say — why is that? It's regulated as I understand it because traditional forms of providing insurance for farmers are not available, just like hurricane insurance, things like that. So — but in the Apex case, this Court specifically found that even though there was a provision in the agreement that said that the inventory that the plaintiff or the petitioner was requesting in that case was valueless, the arbitrator determined that it did have value. So just because there is a misinterpretation of law, a misinterpretation of the contract, does not vacate the arbitrator's decision. And the Fourth Circuit case law is incredibly clear on that issue. Otherwise, all we are doing in an arbitration process is adding an additional layer of — additional layer of litigation. This is a crop insurance claim from 2013. We are now almost in 2019. So you're saying essentially you would be requiring us to write an opinion that says the arbitrator has the authority to ignore an FCIC predetermination requirement? No, Your Honor. Why not? All I'm asking that this Court do is find that even though the Court may or would disagree with the interpretations of law and the interpretations of contract that the arbitrator has made, that that ruling, in order to abide by the Federal Arbitration Act and the hundreds of thousands of arbitrations that are conducted all over North America — But, see, and I don't mean to cut you off, but what — your position really worries me, because I think it would be sending a signal to say that it's okay for arbitrators to ignore this whole regulatory system of the predetermination requirement that the FCIC specifically put in place in 2004. Not a problem, because you're in arbitration. I mean, wouldn't that be the takeaway from our opinion? Well, I think — To lawyers advising their clients? It potentially could be. And if the FCIC doesn't like that, they can change the policy. But for right now, the disputes are supposed to be heard in arbitration. The arbitrator is supposed to decide all disputes. And I think the Court could indicate, as some form of precedent, since there is none in this circuit, as to this issue on crop insurance, that the arbitrator does need to abide by those, so that when the arbitrator sees it down the road or the next time, this case can be cited and they can say, well, I'm not allowed to do this, and there's clear precedent. In this case, the case law that I have found supports a theory that extra-contractual claims can be recovered and that they are not preempted under — expressly preempted or implicitly preempted under the Federal Crop Insurance Act. So I believe that, as it pertains to the award, that it should be confirmed in its findings of fact regarding what the arbitrator thought that she awarded or didn't award. And the basis for the district court vacating everything was that the district court believed that the arbitrator did not award contractual damages. Well, there's six provisions or six paragraphs in the arbitration order which specifically provide where the arbitrator says, I conclude that DCI, diversified, failed to comply with the terms of the policy, and she awarded contractual damages based on that. That contractual — How could we figure out how much was awarded in contractual damages versus extra-contractual damages? Yes, Your Honor. It's in the award. Okay. So how much for contractual damages and how much for extra-contractual damages? Yes, Your Honor. The award of contractual damages for the first policy was $97,692 and 39 cents, and the award for the second policy was $77,668 and 59 cents. And those would have been paragraphs 51 through 54 and 42 through 45 of the arbitration. And that's the contractual damages? Yes, Your Honor. Okay. How much was awarded for extra-contractual damages? What happened was they trebled, because of the bad faith insurance law under North Carolina, they trebled the contract damages and then awarded attorney's fees, would have been the $170,000 times three, approximately, and then $98,000 of attorney's fees. So roughly, the trebled amount was $540,000 of the $180,000 contractual damages. And to expand on that a little bit, there has to be an incentive for crop insurance providers to abide by their policies. And the incentive, as found in Moy and some of these other cases, is the extra-contractual bad faith arguments that need to be made. And so we would say that those extra-contractual damages can certainly be awarded, that the district court could not substitute its rulings for that of the arbitrator, there's no transcript, there's no additional evidence presented in front of the district court, and that the case law in the Fourth Circuit is pretty clear that even if an award resulted from the misinterpretation of law, faulty legal reasoning, or Roney's legal conclusion, that the arbitration award should be affirmed. Thank you. All right, sir. Thank you. Mr. Allen? Good morning. My name is Jeff Allen. I'm here today from Clarksdale, Mississippi, on behalf of the respondent in this matter, Diversified Crop Insurance Services. The court asked a lot of good questions because those are the same questions that we raised as the respondent at the district court level, and because there's probably 99 things I'll forget to say today, before I do, I would draw the court's attention to the amicus brief submitted in this matter. It's part of the record, and I'm sure the court has already seen it. I've put a great amount of significance and deference on that for two reasons, because we're here today asking that the decision of the district court to vacate the arbitration award be upheld, and I will touch on those reasons. Of course, they're set forth probably much better than I can set them forth here in our briefs and in RMA's amicus briefs. So in this case, we believe that the reason that it's so heavily regulated is because this is not property and casualty. This is not an automobile policy. This is a program created by the United States government and administered by the Department of Agriculture under the Risk Management Agency and the Federal Crop Insurance Corporation. And the reason they did that is because private companies simply weren't willing to take the risk. So in a country where free farming is a risk, no one would come forward and offer this type of insurance, because farming, and my dad's a farmer, it's a risky business. So the government stepped in, and in a program that is highly regulated, the other reason that it's highly regulated, or at least an additional reason that it is, is because in many of these policies, the U.S. Treasury is ultimately on the hook for the amounts paid. To jump to the last point that Council made, he noted, and respectfully, he's employing traditional methods of thinking with regard to, well, how do we make sure that these companies don't do wrong by their insurance? And crop insurance, after doing it for 22 years, it takes everything you know about insurance and it turns it on its head. And the reason is that the answer to his last question is that, by and large, crop insurance companies are much more concerned with making sure they do right by the federal government and that they keep their contract to be able to administer this program rather than being afraid of an insured and how the claim may be handled. Don't get me wrong. I'm not saying that they act in bad faith because they're excuse me, the obligation they have to do right under the contract they have with the government drives their decisions. But you're not saying that the private insurer can't be held liable for negligence or fraud in a judicial review, are you? I am not. The issue in this case is not, I would respectfully argue, whether those damages are or are not recoverable. It's where are they recoverable? Who may award those damages? And the answer to those two questions is, and with specific regard to this case is, that they are not awardable at the arbitration stage and they are not awardable by the arbitrator. And there are other preconditions that must be satisfied. Yes, there was a request made to the FCIC in this case that the FCIC noted, as the record indicates, you've made your request too soon. The policy says you've got to arbitrate before coming here. So whether that request could have been renewed, whether it was renewed, I see nothing in the record to reflect that fact. But as I began, and now I've spent five minutes not ever saying the initial point I was going to make, in this case we have an arbitrator who did not follow the attendant FAS that is cited throughout my brief extensively, final agency determinations. And of course that's referring to a determination by the risk management agency. Now in this case we've got the amicus support. So we have the writer of the policy who, I guess this is, at least for me in my case, which is not just crop insurance, it's unique from the standpoint that we have an interested but a non-party to this action coming in, the writer of the policy, to provide its thoughts. And a review of the amicus briefing in this matter, both the original brief, the reply brief. Are you sure that an amicus was filed in this court? No, Your Honor. An amicus was filed at the district court level and is a part of the district court, did have that. In fact, RMA participated in the hearings that we had because we did have oral arguments at the district court level as well. And so RMAs, when posed the question to them, hey listen, y'all wrote the policy, take a look at what happened here and tell us what you think. Their answer was that the arbitrator overstepped her bounds, that she interpreted the policy, that she awarded damages that she was not better than we said them in our own brief. So that is, in fact, the writer of the policy, the administrator of the program, coming in and offering their take on the underlying events and whether or not the arbitration award should be allowed to stand. The initial comment by counsel was, he said there's one issue, whether the standard applicable for review of arbitration and all other cases is somehow different from crop insurance cases. And respectfully, I don't see that. The standard under the FAA provides four distinct bases upon which an arbitrator's decision may be vacated. And in this particular case, the motion to vacate that was filed by the appellee herein was under an abuse of the authorities granted. You have to look to the underlying crop insurance policy because that is, in fact, the contract between the parties to establish the arbitrator's authority. So I see nothing unique in terms of the district court's decision, its handling of this matter, or in any way seeing how the crop insurance policy with regard to vacation of an arbitration award was handled any differently than it might have been in another case. Some of the questions posed by the panel, what authority did the arbitrator have to award extra contractual damages, fees, and costs? And the answer, quite frankly, is none. Those damages, and it's very clear in the policy, it seems unequivocal that those damages may not be awarded by an arbitrator. The only damages that may be awarded are those that, quote, arise under the policy. And that means, in this case, because I do want to address the claim that I do not think should be well taken by the appellant, that the arbitrator awarded contractual damages. A moment ago there was a discussion concerning that on one of the two policies the award was $97,000, and that's just rounding, and $77,000. A review of the arbitrator's award reveals that immediately prior, if not within the same paragraph, and RMA very much picked up upon this point, as did we in our brief to the court, that in the same paragraph where the arbitrator says she's awarding contractual damages, she had already found the land to be uninsurable. So if the land is not insurable, how do you have a contract damage award flowing from that? And there's one of two possibilities. The first possibility is that the same paragraphs then also cite negligence, breach of fiduciary duty, and maybe constructive fraud. I may be wrong. But in other words, within the same paragraph saying here are the contractual damages, there are three separate torts cited. So one possibility is that the arbitrator simply, on the one hand, called them contractual damages, but on the other hand, actually awarded the torts that are, again, identified in the same paragraph making the award. The other possibility is that the arbitrator was somehow attempting to award damages other than those arising under the contract. In other words, some type of, you know, equitable type damages that might appear in a chantry court or a court of equity as we have in Mississippi. And either way, those damages would have been impermissibly awarded because on the first hand, the award cannot be based in tort. They can only be damages that would have been established under the policy. And on the second hand, if they were some type of contractual based damages other than purely a breach of contract that is a easily calculable, quantifiable number in the world of crop insurance, then the policy cannot have an award based upon equitable type damages, equitable relief. So what the arbitrator did in this case was she simply fashioned her own award. And we're not here, I guess, to try to figure out why she did it. We can only review the fact that it did in fact happen and whether or not she had a basis to do so. But I would note again with regard to the contract issue, and we point this out in greater detail in our brief, if these truly were contract damages arising under the policy, then there had to have been something spelled out as to the basis for those damages, such as how many acres were covered, in what county was it covered. Again, crop insurance is a situation where when the policy is issued, if there is, it's formulated from the standpoint that you can plug in the acres and the dollar guarantee and the level of coverage, etc., and you very much can spit out the number, and those numbers are generally never in dispute in arbitration. There can be fact disputes, there can be disputes that have to occur in order to figure out what those are, but usually that's not, the number itself is not in dispute. I harp upon this because in this case, the evidence, as I recall, that was submitted in arbitration came in the form of an email where someone was asked, well, how much is under the policy? And the numbers given are the numbers that the arbitrator plugged into the award. Where is the charge for premium? This award, if you look at it and you accept the fact that these are contractual noted, premium statements come out, and again, this is to help farmers. The reason the program is set up like this, you purchase your policy, you get your coverage, you go all year long, and then in the fall, generally speaking, or if it's a winter crop, then in the spring when you might sell something like winter wheat, then your premium statements come due. And so that is to help the farmers to be able to basically get the premium kind of interest-free, so to speak. You don't have to borrow money with your farm loan to pay your premium up front. So when you begin to sell the crop, that's about the time that your premium statement comes due. So they do, in fact, owe premium, it's just on the back end. Where in the arbitrator's award does she assess an amount or break down an amount, or if anything, there should have been, if that was going to be her award, there should have been a request of the company, listen, here's our damages, how much premium would they owe? Of course, we couldn't have answered the question to be perfectly honest with you, and we did submit in the arbitration an amount for what, if you take what they claim to be accurate, how much the contract damages would be. And I can state that, although I know the facts of the arbitration are not pertinent to this case specifically, it was not $97,000 and $77,000. The most succinct statement that I took from the district court's underlying decision, and this pretty much summarizes everything that the arbitrator did, the court wrote, just paraphrasing, that the arbitrator not only engaged in prohibited interpretation of the policy and awarded prohibited damages but also ignored a published FAD, or actually that should be plural, to do so. So a trifecta, all easily discernible by reviewing the arbitrator's award, all easily discernible from reviewing the district court's award with regard to applying the facts to the law. If we rule in your favor, what remedies does Williamson have, will they have going forward with regard to these claims? At this juncture, Your Honor, the district court vacated the award. So I don't know if the action would... Would they be able to go back to arbitration? That's a question that I don't think I'm prepared to answer today. There's been quite a long period of time, and plus the district court's decision did not make any reference to what would happen next. It simply vacated the award. Because, in effect, the case was arbitrated. So the company would agree that the insured satisfied their obligation to arbitrate, which, of course, is a prerequisite, as we know, to get to any type of next step there might be. At this point, I don't know what else there would be to do because the damages that were awarded were simply impermissible. And as I review the district court's decision striking the award didn't necessarily undo the fact that the case was arbitrated. Well, could they seek a determination from the FCIC? They could certainly make an effort to do so. Now, whether or not there are any time limitations or things of that nature, that's something that I don't necessarily know the answer to. Okay. Anything further? No. Thank you very much. All right. Thank you. Your rebuttal. Thank you, Your Honor. I had some time to think about your tractor question. And I think if there's no rational basis for the award, then that would be exceeding her authority. In this circumstance, there is a rational basis. There's the case law, which has been cited before the Fourth Circuit, excuse me, before this Court, as well as in front of Judge Dever and the arbitrator. The arbitrator heard several arguments about extra-contractual versus contractual claims, both during the arbitration hearing and post-hearing submissions, etc. So this circuit is comprised of five states. West Virginia, Virginia, North Carolina, South Carolina, and Maryland. Almost all of these states have a large agricultural section of their state, whether it be crops or livestock. Agriculture is 5.5% of the U.S. economy. In North Carolina, agriculture constitutes 16 cents of every dollar, employs 630,000 people. And while there have not been many cases, this was an issue, I believe, of First Impression, at least as to the application of a crop insurance policy in this circuit. This is a very important issue in this circuit, which is an agricultural community. And the seminal issue, as I stated before, is whether arbitrations are an efficient means of resolving disputes or an additional unnecessary step in crop insurance litigation. A step that small farmers might not have the means to go through themselves. And I think at the heart of the case is whether we are going to help farmers, especially small farmers, or not. Because while there may not be a lot of these cases today... But we're not legislators. We follow the law. That sounded like sort of a political argument. It is. The reason that I state that is because the arbitration process is entitled to deference. And that is the rule, that is the law under the Fourth Circuit. And while there may not be a lot of these cases today, they are coming. Whether it be because of the impacts of Hurricane Florence. Whether it be the trade wars with China, which have increased incredibly the cost... Or excuse me, decreased the cost of soybeans. Does there need to be some incentive for crop insurance companies to pay on valid claims and treat farmers the same as everybody else, feed them from the same trough, which is the Federal Arbitration Act? Williamson Farm has been run through a gauntlet, which is not the intent behind the policy. The intent is the arbitrator decides all disputes. This was a 2013 crop year claim. The rule that I see as I drive by, and if I could just get one minute, Your Honor, if that's possible, is that we're supposed to thank a farmer three times a day. And farming is the only business that supports a lot of the rural counties, cities that we are a part of. And it extends to their financing, to the product that they buy, to the local coffee shop that they go to. Okay, well, this doesn't sound like an argument on the law, though. So if you could just wrap up on the law, if you would. Thank you, Your Honor. What I would ask is that instead of analyzing the arbitrator's decision with a fine-tooth comb without the benefit of any transcript, we would ask that you protect the arbitration process and confirm the arbitration award in its entirety. Thank you. All right. Thank you very much. We'll come down to Greek Council and then take a brief recess before moving to our next case. Your Honor, the court will take a brief recess.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker